## LEASE SECURED BY MANAGER HELD NOT FOR BENEFIT OF HIS EMPLOYER.

### Circuit Court of Cuyahoga County.

THE M. F. MASON HAT CO. v. MORTIMER MASON AND THE EAST FOURTH STREET IMPROVEMENT COMPANY.

Decided, November 11, 1912.

*Agency—One About to Terminate Agency May Secure for Himself Lease of Building Used by His Principal.*

A lease of a building used as a place of business by his employer, taken by one about to retire as manager of that business, will not be decreed to be held for the benefit of the employer where it was agreed between the employer and manager that upon his retirement the manager might re-engage in the same line of business, and that that particular neighborhood should be fair and free territory for both, and the landlord was fully informed as to the situation when the lease was made.

*Smith, Taft & Arter,* for plaintiff.
*Hidy, Klein & Harris,* contra.

MARVIN, J.; WINCH, J., and NIMAN, J., concur.

The defendant, Mortimer F. Mason, for a number of years was the president anf manager of the plaintiff corporation, which conducted a retail hat store in the city of Cleveland in a room rented from the defendant, the East Fourth Street Improvement Company. The lease of said store room was to the defendant, Mortimer F. Mason, but was held for the benefit of the corporation to whom he had assigned it.

By reason of some complications in the business, the defendant, Mortimer F. Mason, on the 22d day of August, 1912, sold all his stock to Samuel Mundheim, another stockholder in said corporation, and resigned both as an officer and a director of said corporation. The lease for the store room expired on the 31st day of August, 1912.

On said 22d day of August, 1912, when said Mason sold his stock and retired from the corporation, a written contract was entered into between himself and the corporation, setting out somewhat in detail the difficulties which made it desirable that he should retire from the corporation and at the same time, and as a part of said contract, said Mason signed and delivered to the plaintiff two communications which read respectively as follows:

"CLEVELAND, OHIO, August 22d, 1912.

"In order to secure the assent of S. Mundheim personally and S. Mundheim & Company to the action this day taken by the directors of the M. F. Mason Hat Company, approving the overdraft of M. F. Mason, as shown on the books of the company and voting to him an amount equal to said overdraft as additional compensation for his services, said M. F. Mason represents that all overdrafts and claims against him appear on the books of the company, and that there are not outstanding liabilities of the company other than to S. Mundheim & Company, except small bills which will not aggregate more than One Hundred Dollars, and that said M. F. Mason has no other and further claims against said company, and that he will continue without additional compensation until the close of business on Saturday, August 24th, 1912, and that thereafter he agrees to render such assistance by way of furnishing information as may be requested by S. Mundheim or any one acting for and on behalf of him, the intention of this agreement being to make a settlement based on these statements and for him to turn over the business and assist

in any way that he can in seeing that it is carried on, except that
he shall be allowed himself to go into business.

"M. F. MASON."

"CLEVELAND, OHIO, August 22, 1912.
"MR. S. MUNDHEIM,
        "City.

"*Dear Sir:* In connection with the statement today made by me
with reference to the business of the M. F. Mason Hat Company,
I desire to state that it is my intention that the lease on the
Sheriff street store, No. 2045 East 4th street, this city, shall
be an open and fair field as between the M. F. Mason Hat Com-
pany and yourself, or any of your representatives and myself,
and to that end, whatever moral or legal obligation the landlord
of those premises may feel under to me, I hereby release.   This
refers to the right to those premises from and after September
1st, 1912.

"M. F. MASON."

Prior to the 22d day of August, 1912, Mason had arranged
with the owner of the store building for a renewal of the lease,
or a new lease on the building, beginning September 1st, 1912,
but he had received no such lease, though negotiations in that re-
gard had gone so far that he might well expect to receive the
lease.

The first of the communications shows that he contemplated
the carrying on of the hat business in Cleveland, and the second
of the communications is a clear notification to the plaintiff that
he was likely to desire to obtain a lease of this store room and
prosecute his business in such store, and that he had had some
negotiations with the owner of the building in regard to obtain-
ing a lease therefor.   This is clearly implied from the language:

"I desire to state that it is my intention that the lease on the
Sheriff street store No. 2045 East 4th street, this city, shall be
an open and fair field as between The M. F. Mason Hat Company
and yourself, or any of your representatives and myself, and to
that end whatever moral or legal obligations the landlord of
those premises may feel under to me I hereby release.   This
refers to the right to those premises from and after September
1st, 1912."

On the 23d day of August, 1912, Mason obtained a lease of the premises from the 1st of September, 1912, which appears in the lease as its date, and the purpose of this suit is to have it declared that he holds such lease as the trustee of the plaintiff, and to decree that it be declared to be a lease to the plaintiff.

One of the grounds of this claim is that Mason said in the first of the communications hereinbefore quoted:

"Said M. F. Mason will continue without additional compensation until the close of business on Saturday, August 24th, 1912."

Having obtained the lease before the close of business August 24, 1912, which was Saturday, it is claimed that he was then acting for and on behalf of the company, and that he had no right to take this lease to himsef while so in the employ of the company.

Mason said to the company in his communication, which was accepted by them, that there was to be an open and fair field between them as to who should obtain the lease.

Before the lease was finally made to Mason, the landlord had notice that Mason had released him from all moral and legal obligation to give him the lease. On this same 22d day of August, 1912, the plaintiff, at the office of its attorneys, sought to obtain from the landlord a lease to it of these premises. These attorneys of the plaintiff were notified by Mr. Price, president of the landlord corporation, that there had been talk of a lease to Mason, but that such lease had not been consummated, and on this same 22d day of August, before the close of the day, Mason was seeking to have the new lease made to him. Each seems to have started out upon the idea that the field was to be clear and open for both of them and each sought to be first in the field. It was not because Mason did not leave the field clear and fair for the plaintiff, that he got the lease, for the plaintiff seems to have been in the field and seeking the lease fully as early as Mason was, but Mason turned out to be the more fortunate.

We think there was no violation of Masons' duty to the company in so obtaining the lease. The landlord knew that Mason was making no claim because of anything that had transpired between them prior to the 22d day of August, 1912, and it chose

(for it is a corporation), to give the lease to Mason, rather than to the plaintiff, knowing, through the agent of the plaintiff, that it desired the lease.

If the plaintiff was at liberty to seek this lease from the landlord prior to the close of business on the 24th day of August, and if Mason was without right so to seek it within the same time, then there was not a fair and open field between the two, which Mason said in his communication, accepted by the plaintiff, that he was willing to have, and to hold that the plaintiff might secure a lease, if it could, before the close of business on the 24th day of August, and that Mason was prohibited as between him and the plaintiff from so doing, would take away the fair and open competition to which both parties had agreed.

Plaintiff had full notice that Mason expected to go on with the hat business, and that he desired this room, and that there was to be a fair and open field between them. Suppose there had been a stock of goods which both parties knew was on sale, it would hardly be claimed that Mason might not have negotiated for the purchase of such stock of goods before the close of business on the 24th of August. Plaintiff, knowing that he was expecting to go on with the hat business, and that he desired this store, and that there was to be a fair and open field between them as to who should have it, is not entitled to have the lease, which was made on the 23d day of August, 1912, decreed to be for its benefit, and the petition is dismissed.